# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MICHAEL A. MAXIE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CAUSE NO. 3:13-CV-1232-TLS |
| v. | ) | |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Michael A. Maxie, a prisoner proceeding pro se, has filed several documents in this closed case. (ECF Nos. 18, 19, 21, 22, 23, 24, 25, 26.) The Court dismissed Maxie's habeas petition without prejudice on March 20, 2013, after he failed to pay the filing fee as ordered by the Court. (ECF No. 16.) On April 21, 2013, he filed several documents evincing a desire to appeal the court's judgment, including a motion for leave to appeal *in forma pauperis*, a docketing statement, and a motion for release pending appeal. (*See* ECF Nos. 22, 24, 25.) As a procedural matter, Maxie did not file a formal notice of appeal. However, given his *pro se* status, the Court will construe his docketing statement, which contains all the necessary information, as his notice of appeal. *See Smith v. Grams*, 565 F.3d 1037, 1041–43 (7th Cir. 2009); *Wells v. Ryker*, 591 F.3d 562, 564-65 (7th Cir. 2010). Accordingly, the Clerk will be directed to separately docket the docketing statement as a notice of appeal, and to process it accordingly.

## MOTION FOR RECONSIDERATION

Maxie also filed a document which the court construes as a request for reconsideration of the final judgment. (ECF No 21.) Ordinarily, a notice of appeal divests the court of jurisdiction over the case. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). However, if

a party files a timely motion for relief from judgment pursuant to Federal Rule of Civil Procedure 59 or 60, the time for appealing does not begin to run until the court disposes of that motion. Fed. R. App. P. 4(a)(4)(A). When a party files a notice of appeal after the judgment but before the court rules on the motion, the notice of appeal becomes effective when the order disposing of the motion is entered. Fed. R. App. P. 4(a)(4)(B). Here, Maxie tendered his motion to reconsider for mailing within 28 days of the judgment, and before he filed his appeal documents. (*See* ECF Nos. 17, 21.) Accordingly, the Court has jurisdiction to entertain the motion. *See* Fed. R. App. P. 4(a)(4)(B)(i).

Turning to the merits, the Court finds no basis to alter or otherwise disturb the judgment. Maxie appears to argue that the Court should have granted him *in forma pauperis* status because he does not have sufficient funds to pay the $5.00 filing fee.[1] The record demonstrates otherwise. In his original motion for leave to proceed *in forma pauperis*, Maxie attached inmate trust fund ledgers showing that his average monthly deposits for the period May 2013 to November 2013 were $43.26. (ECF No. 5.) In his present filing, he submits ledgers from a slightly different period, and they reflect that his average monthly deposits for the period June 2013 to December 2013 were $27.59. (ECF No. 21 at 7-9.) In either case, these filings reflect that Maxie had sufficient funds available to pay the $5.00 filing fee.

Maxie asserts that he no longer has sufficient funds in his account, but a review of his ledgers indicates that he spent money on phone calls, copying costs, and commissary purchases during this period. (*See* ECF Nos. 5, 21.) Furthermore, court records reflect that he filed five

---

[1] Within one of his filings, Maxie appears to claim that some named "Myron Maxie" paid the $5.00 filing fee on his behalf. (*See* ECF No. 21 at 2.) The Clerk has diligently searched its financial records and has no record of any such payment. If Maxie believes this is in error and has documentation to reflect the payment, he should promptly submit it to the Court.

civil rights lawsuits in this court between September 2013 and January 2014.[2] *See Maxie v. Levenhagen, et al.*, No. 2:14-CV-008 (N.D. Ind. filed Jan. 9, 2014); *Maxie v. Wilson, et al.,* No. 3:13-CV-1277 (N.D. Ind. filed Nov. 29, 2013); *Maxie v. Levenhagen, et al.,* No. 3:13-CV-1279 (N.D. Ind. filed Nov. 29, 2013); *Maxie v. Bruemmer, et al.*, No. 3:13-CV-1280 (N.D. Ind. filed Nov. 29, 2013); *Maxie v. Wilson, et al.,* No. 3:13-CV-1021 (N.D. Ind. filed Sept. 20, 2013.) He made various payments of the initial partial filing fees assessed in those cases (totaling approximately $40.22) between February 2014 and April 2014. *See Maxie*, No. 3:13-CV-1277 (payment of $6.40 on Apr. 7, 2014); *Maxie* No. 3:13-CV-1279 (payment of $8.14 on Feb. 24, 2014); *Maxie*, No. 3:13-CV-1280 (payment of $8.14 on Feb. 24, 2014); *Maxie*, No. 3:13-CV-1021 (payment of $2.94 on Mar. 24, 2014, and payment of $6.40 on Apr. 7, 2014).

Furthermore, Maxie opted to refile his petition under a new cause number on April 24, 2014, and he tendered payment of the $5.00 fee along with the petition. *See Maxie v. Superintendent*, No. 3:14-CV-1444 (N.D. Ind. filed Apr. 24, 2014). For these reasons, the Court concludes that Maxie had sufficient funds available to pay the $5.00 filing fee while this case was pending. The fact that he chose to deplete his account with other expenditures does not mean this Court's ruling was in error. Accordingly, the Motion for Reconsideration will be denied.      Maxie also filed an amended habeas petition (ECF No. 18) and a motion seeking immediate judgment in his favor (ECF No. 19), but the Court has no authority to act on these

---

[2] The court notes that Maxie was previously restricted from filing civil lawsuits due to his abuse of the judicial process; he filed three successive cases under 42 U.S.C. § 1983 asserting the same claim against the same defendant, despite a warning from the court that this was improper. *See Maxie v. Wal-Mart Store*, No. 3:10-CV-515 (N.D. Ind. order dated Feb. 10, 2011). The filing restriction was lifted by the court in May 2013 at Maxie's request. *Id.*, ECF No. 22.

filings, since the case has been closed and is presently on appeal. *Griggs*, 459 U.S. at 58.

**MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

Maxie has filed various motions pertaining to his appeal. He first moves for leave to proceed *in forma pauperis* on appeal. (ECF No. 22.) "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). In identifying his issues on appeal, Maxie asserts the merits of his claims raised in his habeas petition. (ECF No. 23 at 1.) However, the Court did not reach the merits of Maxie's petition. Instead, his Petition was dismissed without prejudice for failure to pay the filing fee. He does not present any arguable basis for overturning the Court's resolution of the Petition. As outlined above, Maxie's filings in this case demonstrate that he was capable of paying the $5.00 filing fee. If he had done so, he could have obtained review of his case on the merits. Indeed, Maxie has now refiled his Petition, and tendered payment of the $5.00 filing fee. *Maxie*, No. 3:14-CV-1444. In light of the record, the Court declines to permit him to proceed *in forma pauperis* on appeal. *See Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (appeal is not taken in good faith where "no reasonable person could suppose that the appeal has some merit.").

As a related matter, because Maxie is appealing the Court's judgment, the Court must consider whether to grant him a certificate of appealability. 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable

4

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the petition is resolved on procedural grounds, to obtain a certificate of appealability the petitioner must establish two components: that reasonable jurists would find it debatable whether the court was correct in its procedural ruling, and that the petition states a valid claim for denial of a constitutional right. *Id.* Each is a threshold inquiry, and therefore, the court need only address one prong if it is dispositive. *Id.* For the reasons fully explained above, Maxie's Petition was properly dismissed for failure to pay the filing fee. The Court finds no basis to conclude that reasonable jurists would debate this outcome or find a reason to encourage Maxie to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

**MOTION FOR RELEASE FROM CUSTODY**

Finally, Maxie filed a motion requesting that the court release him "on a personal recognizance bond" while his appeal is pending.[3] (ECF No. 24.) In habeas cases, federal district judges have "inherent power to admit applicants to bail pending the decision of their cases," but it is a power to be exercised "very sparingly." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985). The U.S. Court of Appeals for the Seventh Circuit explained:

> The reasons for parsimonious exercise of the power should be obvious. A defendant whose conviction has been affirmed on appeal (or who waived his right of appeal,

---

[3] Federal Rule of Appellate Procedure 23 governs requests for release from custody pending review of a decision in a federal habeas case. The rule provides in pertinent part that "[w]hile a decision not to release a prisoner is under review, the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court may order that the prisoner be. . . released on personal recognizance, with or without surety." Fed. R. App. P. 23(b)(3).

as by pleading guilty, or by foregoing appeal after being convicted following a trial) is unlikely to have been convicted unjustly; hence the case for bail pending resolution of his postconviction proceeding is even weaker than the case for bail pending appeal. And the interest in the finality of criminal proceedings is poorly served by deferring execution of sentence till long after the defendant has been convicted.

*Id.* Thus, in order to obtain release pending a decision on a habeas petition, the petitioner must show "not only a substantial federal claim that presents not merely a clear case on the law, but a clear, and readily evident, case on the facts." *Pethtel v. Att'y Gen. of Ind.*, 704 F. Supp. 166, 169 (N.D. Ind. 1989).

Here, Maxie's motion is minimal and focuses mainly on equitable considerations, including his desire to be released so he can be with his son. His sole argument pertaining to the merits is his statement that "Plaintiff Michael A. Maxie believe[s] that he have a likelihood of prevailing" on the merits. (ECF No. 24 at 1–2.) Furthermore, because Maxie failed to resolve the threshold issue of the filing fee, the Respondent was not ordered to file a return to the Petition, nor were any state court records filed. Nevertheless, based on a review of the Petition and the limited record before the Court, Maxie has not made the type of extraordinary showing necessary to obtain release from custody pending appeal.

Maxie is serving an eight-year sentence for battery on a pregnant person and interference with reporting of a crime. (ECF No. 18-1 at 30.) On direct appeal, the state appellate court set forth the following facts underlying Maxie's conviction, which are presumed correct under 28 U.S.C. § 2254(e)(1):

> In 2007, Procela Hummer began living with Maxie in an Elkhart County apartment complex. Hummer became pregnant by Maxie in February of 2008.
>
> On June 14, 2008, at approximately 3 p.m., Maxie left the Elkhart County apartment to go to South Bend. Sometime later, a friend called Hummer and invited her to the

friend's son's graduation party. Hummer called Maxie, who told Hummer not to be gone long. Hummer went to the party with friends, and she called Maxie two times during the party. However, Maxie did not answer. Hummer left the party at approximately 9 p.m., checked her phone, and learned that Maxie had called her six times and left three messages. Hummer "got scared" and listened to the messages, in which Maxie informed her that she needed to be home at a certain time and accused her of flirting with men at the party. Hummer considered the messages left by Maxie to be "nasty."

When Hummer arrived at the apartment, she became "terrified" when she saw that Maxie was home. As Hummer entered the apartment, Maxie approached her, pointed his finger in her face, and told her she needed to be at home. Hummer entered the bedroom and placed her cell phone and keys on a bedroom table. Maxie followed her into the bedroom, "yelling" and "cussing" at her. Maxie grabbed Hummer's cell phone and keys and placed them in his pocket. Maxie then approached Hummer and put his hands on her neck to the point that Hummer could "hardly breathe." Maxie pushed Hummer's head into the bed's headboard, causing her physical pain. Maxie then grabbed the land line phone and took it into the living room.

Hummer, who was crying, left the bedroom and sat down on a couch in the living room. Fearing that a neighbor would hear Hummer crying, Maxie grabbed Hummer's mouth and "squished it hard," causing cuts inside her mouth and on her bottom lip. Hummer was unable to call for help because Maxie had taken the phones.

Hummer fell asleep and woke up the next morning at approximately 9 a.m. Maxie would not allow her to leave the apartment, but around 5 p.m. he received a phone call, placed Hummer's car keys on a table, and stepped outside on the patio to take the call. Hummer immediately grabbed her coat, purse, and the car keys and ran outside to her vehicle.

As Hummer drove out of the parking lot and down the street, she saw a marked Elkhart Police Department vehicle. She flagged down the officer driving the vehicle, Police Corporal Christopher Grathen, who stopped to investigate. Corporal Grathen observed that Hummer was "very upset, borderline hysterical, and crying."

Hummer told Corporal Grathen that Maxie had pushed her head into a headboard and squeezed her mouth on the previous night. She also told him that she couldn't call for help because Maxie had removed the phones. Corporal Grathen had Hummer drive to the police station, where she prepared a statement and an officer took pictures of her injuries.

On December 30, 2008, Maxie was charged with battery on a pregnant woman, domestic battery, and interference with reporting a crime. At the initial hearing, Maxie informed the trial court that he could not afford an attorney and asked the trial

court to appoint an attorney for him. The trial court appointed the Elkhart County Public Defender's office to represent Maxie, and on April 3, 2009, Elkhart County Public Defender Peter D. Todd entered an appearance on Maxie's behalf. However, Maxie later secured private representation and attorney Rod Sniadecki entered an appearance on July 27, 2009. Sniadecki subsequently was disbarred and the trial court vacated his appearance on Maxie's behalf on May 6, 2010.

On June 22, 2010, Elkhart County Public Defender Michelle Voirol entered an appearance on Maxie's behalf. At an August 16, 2010 hearing, Maxie informed the trial court that he was dissatisfied with Voirol's representation, stating that she was incompetent and had a conflict of interest. He also stated that he would attempt to hire private counsel. Voirol indicated that she and her client disagreed on whether he had an Indiana Rules of Criminal Procedure 4 claim. The trial court informed Maxie that it did not control the Public Defender's Office's appointments but that Maxie was free to procure private counsel.

At a September 20, 2010 hearing, Maxie again claimed that he was dissatisfied with Voirol's representation, but he later stated through Voirol that he wanted to proceed to trial. Voirol informed the court that Maxie was abusive, controlling and threatening, but she did not make a request to withdraw her appearance. The trial court again informed Maxie that he was free to hire private counsel but another public defender would not be assigned by the court to the case because "we've been around this block before."

At a November 11, 2010 hearing, the trial court set a trial date of January 11, 2011. Maxie made no objection to the setting of the trial date or the competence of counsel. On December 17, 2010, Voirol filed a motion to withdraw after Maxie missed an appointment because she could not "adequately represent [Maxie] without his cooperation in trial preparation." At a January 4, 2011 hearing on Voirol's motion, Maxie requested that Todd be reappointed, a request which the trial court denied. After the hearing, the trial court denied the motion to withdraw.

A jury trial was held on January 11-12, 2011. The jury reached an impasse, and the trial court was forced to declare a mistrial. A second jury trial was held in February of 2011, and the jury found Maxie guilty of all the charges. Voirol represented Maxie at both trials. On February 28, 2011, the trial court vacated the domestic battery conviction and sentenced Maxie to an aggregate term of nine years, with one year suspended to probation.

*Maxie v. State*, No. 20A03-1103-CR-117, slip op. at *2–6 (Ind. Ct. App. Nov. 1, 2011) (internal citations omitted). In imposing the sentence, the court noted that Maxie had an extensive criminal record with at least 16 misdemeanor convictions, including convictions for domestic

8

battery and battery. *Id.* at *10–11. Maxie unsuccessfully pursued a direct appeal. *Id.* He thereafter filed a post-conviction petition, which was denied. (ECF No. 18 at 1.) He did not pursue an appeal to either the Indiana Court of Appeals or the Indiana Supreme Court in the post-conviction proceedings. (*Id.* at 1–2.)

He then sought federal habeas relief. In his Petition, Maxie raises four claims: his appellate counsel was ineffective; his trial counsel was ineffective; his double jeopardy rights were violated; and a claim of "prosecutorial vindictiveness." (ECF No. 18 at 3–14.) His first claim is confusing, but he appears to claim that his appellate counsel was ineffective in failing to argue that trial counsel was deficient for not objecting to the admission of certain evidence. (ECF No. 18 at 4–6.) Upon review, the Court cannot discern a "clear" and "readily evident" violation of Maxie's Sixth Amendment rights. Instead, it would require a careful parsing of the complete record to determine whether the state court's rejection of this claim constituted an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011) (observing that in light of the deferential standard of review in habeas cases, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Importantly, to ultimately prevail on his claim, Maxie must show that an objection by counsel would have been sustained under Indiana law. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Here, Maxie does not offer a clear explanation of why he believes the evidence was objectionable.

9

Furthermore, it appears Maxie may not have properly exhausted this claim in one complete round of state review. *See Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (to properly exhaust habeas petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory"). Maxie did not raise this claim on direct appeal, *see Maxie,* No. 20A3-1103-CR-117, and he acknowledges that he did not pursue an appeal in the post-conviction proceedings. (ECF No. 18 at 1.) He asserts that he raised this claim in a "motion for dismissal and reverse of conviction" filed with the Indiana Supreme Court following the denial of post-conviction review. (ECF No. 18 at 9.) However, it is not clear that this was the appropriate procedural manner to raise his claim for the first time; his failure to present this claim to the state court in accordance with state procedural rules would result in a procedural default. *Richardson v. Lemke*, 745 F.3d 258 (7th Cir. 2014). If he cannot demonstrate an adequate basis for setting aside the default, which he has not attempted to do in his present filings, this claim could not be reached on the merits. *See McQuiggin v. Perkins*, —U.S.—, 133 S. Ct. 1924, 1931-33 (2013); *House v. Bell*, 547 U.S. 518, 536 (2006). Maxie has not demonstrated an entitlement to release from custody based on this claim.

Maxie's second claim pertains to the trial court's refusal to permit Voirol to withdraw. Like his first claim, there is nothing "clear" or "readily evident" about his right to relief. Again it would require a careful review of entire record, including documents that have not been submitted due to Maxie's failure to pay the filing fee, to determine whether the state court's rejection of this claim constituted an unreasonable application of *Strickland*. Upon preliminary review, however, there appears to be nothing unreasonable about the state court's ruling. The record shows the trial court declined to permit Maxie to obtain new counsel because the trial was

imminent and the case had been pending more than two years. *Maxie*, No. 20A03-1103-CR-117, slip op. at *7–8. The appellate court found no evidence of a breakdown in their relationship, and noted that Maxie failed to assert any objection or argument about Voirol's representation after the motion was denied, even though he was given an opportunity to speak. *Id.* For these reasons, Maxie has not demonstrated an entitlement to release based on this claim.

In a convoluted double jeopardy claim, Maxie does not demonstrate that a "clear" and "readily evident" double jeopardy violation occurred. His complaint appears to be that he was tried twice on the same charges, but double jeopardy ordinarily does not preclude retrial after a mistrial is declared, unless the mistrial was caused by intentional misconduct by the prosecution. *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982). Maxie submits a transcript showing that his counsel agreed to the mistrial (ECF No. 18-1 at 56), and he has not argued or demonstrated that his case falls within the limited exception stated above. Nor is it clear that Maxie properly presented this claim in one complete round of state review. *See Lewis*, 390 F.3d at 1025. Again, he states that he presented this claim in a "motion for dismissal and reverse of conviction" filed with the Indiana Supreme Court after the post-conviction proceedings concluded. It is doubtful this is the proper state vehicle for asserting a double jeopardy claim for the first time. Maxie has not demonstrated an entitlement to release based on this claim. Similarly, as to his final claim, prosecutorial vindictiveness, he acknowledges that he did not present this claim on direct appeal or on post-conviction review, or in any other state filing, which would mean the claim is procedurally default. *Lewis*, 390 F.3d at 1025. He does not articulate any grounds for excusing the default.

Therefore, Maxie has failed to satisfy the exacting standard for obtaining release from custody. The Court does not prejudge the ultimate merits of Maxie's claims should further proceedings occur at a later date; however, based on the present record, Maxie has not demonstrated an entitlement to release pending appeal. Therefore, the Motion will be denied.

## CONCLUSION

For the reasons set forth above, the Clerk is **DIRECTED** to docket the Petitioner's docketing statement (ECF No. 25) as a notice of appeal. The Petitioner's Motions (ECF Nos. 19, 21, 22, 24) are **DENIED**. The Petitioner is **DENIED** a certificate of appealability.

SO ORDERED on May 1, 2014.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION